# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Beattie B. Ashmore, In His Capacity as Court-Appointed Receiver for Ronnie Gene Wilson and Atlantic Bullion and Coin, Inc., ) ) ) ) Plaintiff, ) v. ) ) William R. Fowler and Colleen Fowler, ) ) Defendants. ) ) | Civil Action No. 8:14-cv-04449-JMC  **ORDER AND OPINION** |

Plaintiff Beattie B. Ashmore ("Plaintiff"), in his capacity as court-appointed receiver for Ronnie Gene Wilson ("Wilson") and Atlantic Bullion and Coin, Inc. ("AB&C"), filed the instant action against Defendants William R. Fowler and Colleen Fowler (together "Defendants") to recover grossly excessive payments received by Defendants as a return on their investment in the Wilson-AB&C Ponzi scheme.[1]  (ECF No. 1.)

This matter is before the court pursuant to Plaintiff and Defendants' Cross-Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (ECF Nos. 16, 17.)  For the reasons set forth below, the court **DENIES IN PART AND GRANTS IN PART** Plaintiff's Motion for Summary Judgment and **DENIES** Defendants' Motion for Summary Judgment.

---

[1] "A Ponzi scheme is a fraudulent investment program in which funds are paid in by investors and later investors['] funds are used to pay out nonexistent phantom profits to the original investors, thus creating the illusion that the fraudulent investment program is a successful, profit generating enterprise which, in turn attracts new investment funds that are used to sustain the fraudulent program."  United States v. Wilson, Cr. No. 8:12-cr-00320-JMC, ECF No. 1-1 at 2 ¶ 6 (D.S.C. Apr. 4, 2012).  In Wilson, the United States alleged that Wilson, through AB&C, "orchestrated a Ponzi scheme whereby he led investors to believe that he was investing their money in silver, when, in fact, Wilson was not buying silver but using the money for his personal gain . . . [and] [t]o keep the Ponzi scheme going, Wilson also made payments to earlier investors to whom Wilson made representations that their investments were earning high rates of return–sometimes in excess of 200 percent.  Id. at ECF No. 17 at 1.

## I.     RELEVANT BACKGROUND TO PENDING MOTION

On the recommendation of his financial advisor, Ed Atwell, William Fowler made an initial investment of $122,582.93 in the Wilson-AB&C Ponzi scheme on or about December 14, 2006.  (ECF Nos. 16-1 at 7:1–5, 16-4 at 3, 17-2 at 24:7–13 & 17-3 at 2.)  The money was transferred by check to AB&C from a cashed out annuity held by The Hartford in William Fowler's name.  (ECF No. 17-3 at 2.)  Subsequently, on December 1, 2008, William Fowler made an additional investment in the Wilson-AB&C Ponzi scheme of $49,680.00 for a total investment of $172,262.93.  (ECF Nos. 16-4 at 3 & 17-5 at 11.)  The money for the second investment came from William Fowler's retirement account and was transferred using a check drawn on an account jointly owned by Defendants.  (ECF No. 17-5 at 11.)

From October 29, 2007, until February 17, 2012, William Fowler made a total of 10 withdrawals from the Wilson-AB&C Ponzi scheme in the amount of $596,124.93.  (ECF No. 16-4 at 3.)  Defendants used funds obtained from the Wilson-AB&C Ponzi scheme to buy a house in both their names, tithe to their church, pay off their car and their doctors' bills, and build a pool for their personal use.  (ECF No. 19-1 at 5:158:8–161:20.)  To possess an account allowing access to the Wilson-AB&C Ponzi scheme, William Fowler did not sign any service agreements or provide a social security number or a driver's license.  (ECF No. 16-1 at 13:17–25.)  William Fowler was also not provided regular monthly, quarterly, or year-end statements from the Wilson-AB&C Ponzi scheme.  (Id. at 12:1–6.)  Moreover, William Fowler never received Form 1099s or any other kind of tax document from Wilson-AB&C.  (Id. at 3:7–19.)

The court appointed Plaintiff Receiver in In Re: Receiver for Ronnie Gene Wilson and Atlantic Bullion & Coin, Inc., C/A No. 8:12-cv-02078-JMC, ECF No. 1 (D.S.C. July 25, 2012), a case related to the instant matter.  Since he was tasked with "locating, managing, recouping,

and distributing the assets of the Wilson-AB&C investment scheme," Plaintiff commenced the instant action against Defendants on November 18, 2014, asserting claims for fraudulent transfer (in violation of the Statute of Elizabeth, S.C. Code Ann. § 27-23-10 (2014)) and unjust enrichment. (ECF No. 1 at 1 ¶ 1 & 6 ¶ 38–7 ¶ 52.)  On January 22, 2015, Defendants answered the Complaint. (ECF No. 6.)  Thereafter, on November 3, 2015, the parties filed their respective Motions for Summary Judgment (ECF Nos. 16, 17), to which opposition was filed as to each Motion on November 20, 2015.  (ECF Nos. 19, 20.)

On January 19, 2016, the court held a hearing on the pending Motions.  (ECF No. 31.)

## II.    JURISDICTION

The court has jurisdiction over this matter under 28 U.S.C. § 1331 pursuant to Plaintiff's allegation that the Complaint "is so related to the In Re Receiver, 8:12-CV-2078-JMC case and the underlying criminal case, United States v. Wilson, et al, 8:12-cr-00320[,]" cases in which the court has jurisdiction, "that it forms part of the underlying case or controversy."  (ECF No. 1 at 1 ¶ 3.)  The court may properly hear Plaintiff's state law claims for fraudulent transfer and unjust enrichment based on supplemental jurisdiction since these claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a).

## III.    LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248–49 (1986).  A genuine question of material fact exists where, after reviewing the record as a

whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. Newport News Holdings Corp. v. Virtual City Vision, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

"When considering motions from both parties for summary judgment, the court applies the same standard of review and so may not resolve genuine issues of material fact." Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co., 176 F.3d 794, 797 (4th Cir. 1999) (citation omitted). "Instead, . . . [the court] consider[s] and rule[s] upon each party's motion separately and determine[s] whether summary judgment is appropriate as to each under the Rule 56 standard." Id. (citation omitted).

## IV.    ANALYSIS

A.    Plaintiff's Motion for Summary Judgment

*1. The Parties' Arguments*

Plaintiff moves for summary judgment asserting that there are no issues of material fact

4

regarding his claims against Defendants for fraudulent transfer under the Statute of Elizabeth and for unjust enrichment. (ECF No. 16 at 8.) Specifically, Plaintiff asserts that he is entitled to set aside fraudulent transfers from the Wilson-AB&C Ponzi scheme to Defendants pursuant to the Statute of Elizabeth because (1) the existence of a Ponzi scheme establishes the actual intent of the Wilson-AB&C Ponzi scheme to defraud; (2) the Wilson-AB&C Ponzi scheme was indebted at the time of the transfers to Defendants; and (3) the Wilson-AB&C Ponzi scheme's intent to defraud is imputable to Defendants. (Id. at 9–12.) As to his claim for unjust enrichment, Plaintiff asserts that (1) Defendants received a benefit of $596,124.93 from the Wilson-AB&C Ponzi scheme after depositing only $172,262.93 resulting in a profit of $423,862.00; (2) Defendants realized the benefit as they used the excess monies for their own purposes; and (3) "it is inequitable for Defendants to retain the profit as the monies were obtained by fraud and injured both the Receivership Entities and other investors who lost money as a result of the fraud." (Id. at 12–13.) As a result of the foregoing, Plaintiff asks the court to grant summary judgment on all claims set forth in the Complaint.

Defendants oppose Plaintiff's Motion for Summary Judgment arguing that Colleen Fowler "is not liable for the debts or liabilities of her husband." (ECF No. 20 at 1.) They further argue that Colleen Fowler is not liable as alleged because she "did not invest her money with AB[&]C, did not have an account with AB[&]C, and never received a transfer or withdrawal from AB[&]C." (Id. at 3.) Defendants next argue that there is a question of fact regarding whether Wilson-AB&C's intent to defraud is imputable to William Fowler based on his lack of investment knowledge and experience. (Id. at 4–6.) Moreover, because the Receiver stands in the shoes of the corporation and not the losing investors in a Ponzi scheme, Defendants argue that Plaintiff is not entitled to summary judgment on his equitable claims since AB&C has

unclean hands "and the weight of the equities favor the Fowlers." (Id. at 7–8.)

   *2. The Court's Review*

Plaintiff contends that he is entitled to summary judgment because the transfers made by the Wilson-AB&C Ponzi scheme to William Fowler were fraudulent conveyances in violation of the Statute of Elizabeth. The Statute of Elizabeth provides that "[e]very gift, grant, alienation, bargain, transfer, . . . made to or for any intent or purpose to delay, hinder, or defraud creditors and others . . . must be deemed and taken . . . to be clearly and utterly void . . . ." S.C. Code Ann. § 27-23-10(A) (2016). To set aside a transfer like the ones at issue in this matter, Plaintiff must establish that (1) the transfer was made by the Wilson-AB&C Ponzi scheme with the actual intent of defrauding its creditors; (2) the Wilson-AB&C Ponzi scheme was indebted at the time of the transfer; and (3) the Wilson-AB&C Ponzi scheme's intent is imputable to Defendants. Durham v. Blackard, 438 S.E.2d 259, 262 (S.C. Ct. App. 1993) (citations omitted). "A clear and convincing evidentiary standard governs fraudulent conveyance claims brought under the Statute of Elizabeth." Oskin v. Johnson, 735 S.E.2d 459, 463 (S.C. 2012) (citation omitted).

In considering the evidence presented by the parties, it is clear that the first 2 elements of a fraudulent conveyance claim are satisfied because the Wilson-AB&C Ponzi scheme intended to defraud its creditors and was indebted at the time of its transfers to William Fowler. E.g., Petit v. Allen, C/A No. 5:11-cv-158, 2015 WL 5026305, at *2 (W.D.N.C. Aug. 25, 2015) ("[W]here the existence of a Ponzi scheme is proved, it is conclusively presumed that the transferor of a fraudulent conveyance made the transfer with actual intent to defraud its creditors.") (citation omitted); Ashmore v. Taylor, C/A No. 3:13-2303-MBS, 2014 WL 6473714, at *3 (D.S.C. Nov. 18, 2014) ("The existence of a Ponzi scheme gives rise to a presumption of fraudulent intent on the part of the proponent of the scheme . . . . Further, the nature of a Ponzi scheme leads

6

ultimately to insolvency because the proponent incurs debts beyond his ability to pay as they become due.") (citations omitted); Armstrong v. Collins, C/A Nos. 01 Civ. 2437(PAC), 02 Civ. 2796(PAC), 02 Civ. 3620(PAC), 2010 WL 1141158, at *21 (S.D.N.Y. Mar. 24, 2010) ("Courts have also held that debtors operating Ponzi schemes are, by definition, insolvent.") (citations omitted). As to the third element of a fraudulent conveyance claim, Plaintiff has to demonstrate that William Fowler "had notice of circumstances which would arouse the suspicion of an ordinarily prudent man and cause him to make inquiry as to the purpose for which the transfer was being made, which would disclose the fraudulent intent of the maker." Ashmore v. Taylor, 2014 WL 6473714, at *4 (citing Coleman v. Daniel, 199 S.E.2d 74, 80 (S.C. 1973) ("The transaction is subject to attack if at the time of the transfer the transferee had notice of circumstances which would arouse the suspicion of an ordinarily prudent man and cause him to make inquiry as to the purpose for which the transfer was being made, which would disclose the fraudulent intent of the maker.")). Viewing the facts in the light most favorable to Defendants, the court concludes that it is unable to find by clear and convincing evidence that William Fowler was on notice of circumstances regarding the Wilson-AB&C Ponzi scheme that would arouse the suspicion of an ordinarily prudent person. Accordingly, Plaintiff is not entitled to summary judgment on his claim for fraudulent conveyance in violation of the Statute of Elizabeth.

Plaintiff also asserts that he is entitled to summary judgment on his claim against Defendants for unjust enrichment. In South Carolina, "[u]njust enrichment is an equitable doctrine, akin to restitution, which permits the recovery of that amount the defendant has been unjustly enriched at the expense of the plaintiff." Ellis v. Smith Grading & Paving, Inc., 366 S.E.2d 12, 14 (S.C. Ct. App. 1988) (citing Barrett v. Miller, 321 S.E.2d 198, 199 (S.C. Ct. App.

7

1984)).  To establish unjust enrichment in this matter, Plaintiff must prove the following three elements: (1) a benefit conferred upon Defendants by Plaintiff; (2) realization of that benefit by Defendants; and (3) retention by Defendants of the benefit under conditions that make it unjust for them to retain the benefit.  Ellis, 366 S.E.2d at 15.

The court observes that Plaintiff as the Receiver in In Re: Receiver for Ronnie Gene Wilson and Atlantic Bullion & Coin, Inc. has been empowered to institute legal proceedings "against those individuals, corporations, agencies, partnerships, associations and/or unincorporated organizations, that the Receiver may claim to have wrongfully, illegally or otherwise improperly be in the possession of or misappropriated/transferred monies or other proceeds directly or indirectly traceable from investors in the Ponzi scheme . . . ."  C/A No. 8:12-cv-02078-JMC, ECF No. 43 at 3 ¶ 2.  Viewing the facts in the light most favorable to Defendants, the court finds that Plaintiff's evidence demonstrates that a benefit of $423,862.00 was conferred on Defendants and Defendants had an appreciation or knowledge of that benefit.  (ECF Nos. 16-4 at 3 & 19-1 at 5:158:8–161:20.) Defendants do not suggest error in this finding, instead choosing to argue that it would be inequitable to either hold Colleen Fowler liable or award a judgment against them in favor of the Wilson-AB&C Ponzi scheme.  (ECF No. 20 at 7.)

Although Defendants paint a very distressing picture of their financial plight (id.), the court cannot ignore that the undisputed record shows that William Fowler received a net benefit of $423,862.00 from his involvement in the Wilson-AB&C Ponzi scheme.  E.g., Ashmore v. Taylor, 2014 WL 6473714, at *4 ("The court finds that it would be inequitable for Defendant to 'enjoy an advantage over later investors sucked into the Ponzi scheme who were not so lucky.'") (citation omitted); In re Dreier LLP, 462 B.R. 474, 485 (Bankr. S.D.N.Y. 2011) ("The general rule in Ponzi scheme cases is that net winners must disgorge their winnings. '[I]nvestors may

retain distributions from an entity engaged in a Ponzi scheme to the extent of their investments, while distributions exceeding their investments constitute fraudulent conveyances which may be recovered by the Trustee.'") (citations omitted). Under these circumstances, it would be inequitable for William Fowler to retain the benefit that he received from the Wilson-AB&C Ponzi scheme. Therefore, summary judgment on Plaintiff's cause of action for unjust enrichment against William Fowler is appropriate. As explained more fully below, there is a dispute of fact regarding whether Colleen Fowler was a beneficiary of proceeds from the Wilson-AB&C Ponzi scheme to hold her liable for unjust enrichment.

B.     Defendants' Motion for Summary Judgment

*1. The Parties' Arguments*

Defendants first assert that Colleen Fowler is entitled to summary judgment because she neither invested in AB&C nor received any transfers or conveyances from AB&C. (ECF Nos. 17 at 1 & 17-1 at 3.) In this regard, Defendants assert that "William Fowler, not Colleen [Fowler] was the transferee on every transfer made from AB[&]C." (ECF No. 17-1 at 4.) As a result, Defendants argue that "[t]here is no evidence AB[&]C conferred any benefit or transferred anything of value to Colleen" Fowler." (Id. at 5.)

Defendants next assert that Plaintiff's equitable claim for unjust enrichment is barred by the doctrine of unclean hands or in pari delicto. (Id. at 6.) They argue that AB&C was a corporate participate in the Ponzi scheme "and there is no equity in permitting an action for unjust enrichment by a corporate wrongdoer." (Id. at 7.)

Finally, Defendants contend that Plaintiff is foreclosed from seeking to set aside certain conveyances because there is a 3 year statute of limitations for a claim brought under the Statute of Elizabeth. (ECF Nos. 17 at 1 & 17-1 at 7 (citing S.C. Ann. § 15-3-530(7)).) Therefore,

Defendants argue that they are entitled to summary judgment as to 8 of the 10 withdrawals made by William Fowler from his account at AB&C.  (ECF No. 17-1 at 7.)

Plaintiff opposes Defendants' Motion for Summary Judgment.  Plaintiff argues that because the second investment was made from an account jointly held by Defendants (see ECF No. 17-5 at 11), "a genuine issue of fact exists concerning the level of Colleen Fowler's participation as well as her ownership of the investment made with Wilson/AB&C."  (ECF No. 19 at 3.)  In support of this argument, Plaintiff asserts that Colleen Fowler should remain in this action because Defendants used funds obtained in the Wilson-AB&C Ponzi scheme to buy a house in both their names, tithe to their church, pay off their car and their doctors' bills, and build a pool for their personal use.  (ECF No. 19-1 at 5:158:8–161:20.)  Plaintiff further argues that the defense of in pari delicto is inapplicable to his equitable claims because he seeks diverted funds, not damages.  (ECF No. 19 at 6 (citing Myatt v. RHBT Fin. Corp., 635 S.E.2d 545, 548 (S.C. Ct. App. 2006)).)  As to Defendants' statute of limitations argument, Plaintiff argues that their Motion should be denied because the evidence does not establish that "the Receiver knew or could reasonably have known for three years prior to bringing suit that the transfers were fraudulent conveyances that had been made during the operation of a Ponzi scheme and using funds from AB&C that were proceeds of that scheme."  (Id. at 7 (citing Janvey v. Brown, 767 F.3d 430, 438 (5th Cir. 2014)).)

   *2. The Court's Review*

Defendants contend that Colleen Fowler is entitled to summary judgment on Plaintiff's claims against her because she is not liable for William Fowler's participation in the Wilson-AB&C Ponzi scheme even though Defendants admit that "some of the withdrawals [from AB&C] may have benefitted Colleen or were deposited by William into a joint bank account."

10

(ECF No. 17-1 at 4.) Defendants further contend that summary judgment is appropriate because Plaintiff's unjust enrichment claim is precluded by the doctrines of in pari delicto and unclean hands and the applicable statutes of limitations bar 8 of the 10 transactions used by Plaintiff to support his claims for fraudulent conveyance and unjust enrichment.

In considering the parties' respective positions regarding whether Colleen Fowler was a beneficiary of proceeds from the Wilson-AB&C Ponzi scheme, the court observes that under South Carolina common law, "[p]roperty that is nonmarital at the time of its acquisition retains its separate identity unless it becomes transmuted into marital property." Smith v. Smith, 687 S.E.2d 720, 729 (S.C. Ct. App. 2009) (citing Miller v. Miller, 358 S.E.2d 710, 711 (S.C. 1987)). "Nonmarital property may be transmuted into marital property if: (1) it becomes so commingled with marital property to render it untraceable; (2) it is titled jointly; or (3) it is utilized by the parties in support of the marriage or in some manner evidencing an intent by the parties to make it marital property." Id. (citing Johnson v. Johnson, 372 S.E.2d 107, 110 (S.C. Ct. App. 1988)). After considering the evidence in the light most favorable to Plaintiff, the court finds that even though William Fowler was the named account holder with AB&C, an issue of disputed fact exists regarding Colleen Fowler's status as a beneficiary of proceeds from the Wilson-AB&C Ponzi scheme because a jury could find that she received an unjust benefit from funds flowing to William Fowler from the scheme that were (1) commingled with other funds in Defendants' joint bank account and (2) used to support Defendants' marriage. In light of the foregoing, Colleen Fowler is not entitled to summary judgment and a release from liability at this stage of the proceedings.

As to their contention that Plaintiff's unjust enrichment claim is barred by the doctrines

11

of unclean hands[2] or in pari delicto,[3] Defendants primarily rely on Myatt v. RHBT Financial Corporation.  In Myatt, the South Carolina Court of Appeals affirmed the trial court's determination that the receiver's claims[4] were barred by in pari delicto holding "that, in the absence of a fraudulent conveyance case, the receiver of a corporation used to perpetuate fraud may not seek recovery against an alleged third-party co-conspirator in the fraud."  635 S.E.2d at 548.  However, the Myatt court expressly stated that its holding was based on the fact that the Receiver was seeking tort damages and not diverted funds.  Id. at 548.  Without any other direct guidance from the South Carolina appellate courts on this issue, the court finds that neither unclean hands nor in pari delicto bar the Receiver's claim in this action for unjust enrichment because he is not seeking tort damages, but to obtain equitable relief for victims of the Wilson-AB&C Ponzi scheme.  Cf. Bell v. Kaplan, C/A No. 3:14CV352, 2016 WL 815303, at *4 (W.D.N.C. Feb. 29, 2016) ("The only people who will be hurt by the application of in pari delicto to bar third party actions other than for fraudulent transfers are the victims of the RVG scheme.")

Finally, to ascertain whether 8 of Defendants' 10 withdrawals from the Wilson-AB&C Ponzi scheme should be excluded from Plaintiff's claims because they are time-barred, the court observes that it is governed by a three-year statute of limitations for both of Plaintiff's claims.

---

[2] "The doctrine of unclean hands precludes a plaintiff from recovering in equity if he acted unfairly in a matter that is the subject of the litigation to the prejudice of the defendant." Mason v. Mason, 770 S.E.2d 405, 419 (S.C. 2015) (citation omitted).  "He who comes into equity must come with clean hands." Id.  "It is a self-imposed ordinance that closes the door of the court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." Id. (citation omitted).
[3] "The doctrine of in pari delicto is '[t]he principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing.'" Myatt, 635 S.E.2d at 547 (citing Black's Law Dictionary 794 (7th ed. 1999)).
[4] In Myatt, the Receiver alleged "causes of action for breach of contract, breach of fiduciary duty/constructive fraud, negligence/gross negligence, negligent supervision, unfair and deceptive trade practices, and aiding and abetting a breach of fiduciary duty." 635 S.E.2d at 546.

S.C. Code Ann. § 15-3-530(1), (7) (2016); see also Rumpf v. Mass. Mut. Life Ins. Co., 593 S.E.2d 183, 187 (S.C. Ct. App. 2004) (stating "[i]n determining when a cause of action arose under section 15-3-530, we apply the 'discovery rule'") (citations omitted).  This statute of limitations is modified by the "discovery rule" wherein "the statute of limitations [only] begins to run from the date the injured party either knows or should know, by the exercise of reasonable diligence, that a cause of action exists for the wrongful conduct." True v. Monteith, 489 S.E.2d 615, 616 (S.C. 1997).

Plaintiff was appointed Receiver in this matter on July 25, 2012.  In Re: Receiver for Ronnie Gene Wilson and Atlantic Bullion & Coin, Inc., C/A No. 8:12-cv-02078-JMC, ECF No. 1 (D.S.C. July 25, 2012).  Plaintiff filed the Complaint against Defendants on November 11, 2014 (ECF No. 1), within 3 years of the date he was appointed Receiver by the court.  Based on the foregoing, the court is not persuaded that the applicable statute of limitations in South Carolina bars 8 of Defendants' 10 withdrawals from the Wilson-AB&C Ponzi scheme.  E.g., Taylor v. U.S. Bank Nat'l Ass'n, C/A No. H-12-3550, 2015 WL 507526, at *7 (S.D. Tex. Feb. 6, 2015) ("Therefore, to prevail on a statute of limitations defense when the discovery rule has been asserted in a receivership case, the defendant must present evidence to conclusively show that the receiver knew or could have reasonably known about the harm and for a time period longer than the statute of limitations before he filed suit.") (citing Janvey v. Democratic Senatorial Campaign Comm., Inc., 712 F.3d 185, 193–94 (5th Cir. 2013)); Clark v. Milam, 872 F. Supp. 307, 312 (S.D. W. Va. 1994) ("In terms of the discovery rule, the doctrine of adverse domination deems a receiver to discover the corporation's cause of action upon his appointment.  This is so because the receiver, even if he has or should have discovered previously the wrongdoing in his non-receiver capacity, has no right to pursue the cause of action on behalf of the corporation

until he moves to the capacity of receiver, thereby assuming the received corporation's rights.").

In this matter, after viewing the evidence in the light most favorable to Plaintiff, the court finds that Defendants are not entitled to summary judgment as requested.

## V.     CONCLUSION

Upon careful consideration of the parties' arguments and for the reasons set forth above, the court hereby **GRANTS** Plaintiff Beattie B. Ashmore's Motion for Summary Judgment (ECF No. 16) as to his claim for unjust enrichment against Defendant William R. Fowler, **DENIES** Plaintiff's Motion for Summary Judgment (id.) as to his claim for unjust enrichment against Defendant Colleen Fowler, **DENIES** Plaintiff's Motion for Summary Judgment (id.) as to his claim for fraudulent conveyance in violation of the Statute of Elizabeth, and **DENIES** Defendants William R. Fowler and Colleen Fowler's Motion for Summary Judgment (ECF No. 17).  Plaintiff is entitled to damages from Defendant William R. Fowler on the unjust enrichment claim in the amount of $423,862.00.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

August 2, 2016
Columbia, South Carolina